Charles JACKSON, Petitioner

v.

**PENNSYLVANIA BOARD
OF PROBATION AND
PAROLE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 6, 2008.

Decided June 18, 2008.

Harry J. Cancelmi, Jr., Waynesburg, for petitioner.

John C. Manning, Asst. Counsel and Victoria S. Madden, Chief Counsel, Harrisburg, for respondent.

BEFORE: McGINLEY, Judge, and SMITH–RIBNER, Judge, and KELLEY, Senior Judge.

OPINION BY Judge SMITH–RIBNER.

Charles Jackson (hereafter Jackson) petitions the Court for its review of an order entered by the Pennsylvania Board of Probation and Parole (Board), mailed August 29, 2007, that denied Jackson's administrative appeal of the Board's May 17, 2007 order recommitting Jackson as a convicted parole violator (CPV) because of his summary conviction of public drunkenness resulting in a $50 fine. The Board also set a new maximum parole expiration date.

Jackson questions whether the Board erred in recommitting him as a CPV when he was convicted of a summary offense by a common pleas court judge sitting as a magisterial district judge as opposed to being convicted in a "court of record" under Section 21.1(a) of the Act of August 6, 1941, P.L. 861, *as amended*, commonly known as the Parole Act, added by Section 5 of the Act of August 24, 1951, P.L. 1401, 61 P.S. § 331.21a(a). He claims denial of equal protection and due process where the Board imposes different punishment against an offender convicted by a common pleas court judge sitting as a magisterial district judge and an offender convicted by a magisterial district judge.

In August 1998 Jackson was paroled to a community corrections center while serving ten to twenty years for his conviction on third degree murder and robbery

charges. In October 2001 the Board recommitted Jackson as a CPV to serve twenty-four months backtime for his convictions of drug-related charges. His parole maximum expiration date was changed to January 26, 2009. In June 2002 he was reparoled to a community corrections center for a minimum of three months. On July 6, 2005, he was arrested and charged, *inter alia*, with driving under the influence of alcohol or a controlled substance, driving while operating privilege was suspended or revoked and failing to immediately report an accident. *See* Sections 3802(a), 3742(a), 1543(a), *as amended*, and 3746(a) of the Vehicle Code, 75 Pa.C.S. §§ 3802(a), 3742(a), 1543(a) and 3746(a). In a decision mailed September 2, 2005, the Board recommitted Jackson as a technical parole violator (TPV) to serve twelve months for violating parole conditions by leaving the district without consent, consuming alcohol and failing to refrain from operating a vehicle.

On November 8, 2006, Allegheny County Common Pleas Court Judge Jeffrey Manning found Jackson guilty of the summary offenses of driving while his operating privilege was suspended or revoked, failing to report an accident and a lesser-included offense of public drunkenness.[1] Judge Manning acquitted Jackson of other charges, and he was sentenced to pay separate fines of $200 and $50 for driving while his operating privilege was suspended or revoked and for public drunkenness, respectively. No fine was set for failing to report an accident.

Jackson requested that the Board continue a scheduled January 17, 2007 revocation hearing so that he could obtain documentation that Judge Manning sat as a magistrate and was authorized to do so by the president judge. Certified Record (C.R.) at 56. The request was granted, and a revocation hearing was held April 4, 2007 at which the parole agent submitted a court document listing Judge Manning's disposition of the charges and his sentence. Jackson testified that Judge Manning sentenced him "on a magistrate level." N.T. April 4, 2007 Hearing, p. 12; C.R. at 79. Jackson submitted the criminal docket and Judge Manning's letter to prior attorney dated March 1, 2007 stating: "In accordance with your request, this letter may serve as written confirmation to the fact that ... I acted in the capacity of a magisterial district judge at the time of the trial and sentencing of ... Mr. Jackson." C.R. at 97. In its order mailed May 17, 2007, the Board recommitted Jackson as a CPV for his conviction of public drunkenness and reparoled him to "the back on track-outside renewal community corrections residency program." C.R. at 111. His maximum parole expiration date was set as November 17, 2011.

■ Jackson filed an administrative appeal alleging that the Board erred in recommitting Jackson because his summary conviction by Judge Manning sitting as a magistrate did not support revocation under Section 21.1(a) of the Parole Act:

1. Section 5505 of the Crimes Code, *as amended*, 18 Pa.C.S. § 5505, provides that "[a] person is guilty of a summary offense if he appears in any public place manifestly under the influence of alcohol or a controlled substance...." An offense is a summary offense if "(1) it is so designated in this title [the Crimes Code], or in a statute other than this title; or (2) if a person convicted thereof may be sentenced to a term of imprisonment, the maximum of which is not more than 90 days." Section 106(c) of the Crimes Code, 18 Pa.C.S. § 106(c). A conviction of a summary offense punishable by imprisonment is a "crime" under Section 21.1(a) of the Parole Act for which the Board is authorized to recommit a parolee in its discretion. *Lewis v. Pennsylvania Board of Probation and Parole*, 74 Pa.Cmwlth. 335, 459 A.2d 1339 (1983).

Any parolee under the jurisdiction of the [Board] released from any penal institution of the Commonwealth who, during the period of parole or while delinquent on parole, commits any crime punishable by imprisonment, for which he is convicted or found guilty by a judge or jury or to which he pleads guilty or nolo contendere at any time thereafter *in a court of record,* may, at the discretion of the board, be recommitted as a parole violator. (Emphasis added.)

The Board denied Jackson's administrative appeal, stating that it had jurisdiction to recommit Jackson as a CPV because he was convicted of a crime punishable by imprisonment "before a Judge in the Court of Common Pleas of Allegheny County" and that Judge Manning's statement that he was sitting as a magistrate "does not change the fact that the conviction still occurred in a court of record because there is no indication that the Judge was properly assigned to be a magisterial district judge for that case by the President Judge." C.R. at 122. The Board also rejected Jackson's challenge to the maximum parole expiration date.[2]

Relying on the dictionary definition of a court of record[3] and citing statutory provisions containing the term, Jackson argues that the Board was not authorized to recommit him as a CPV because his conviction of the summary offense before a magisterial district judge does not constitute a conviction in a court of record and that he may be recommitted only as a TPV. He maintains that common pleas court judges sit as magisterial district judges in many cases; that the Board offered only Judge Manning's handwritten order and minutes, but not a stenographic record of the proceeding, when the Board had the burden of proving Jackson's conviction and sentence in a court of record; and that the different treatment of a summary conviction before a judge sitting as a magisterial district judge is unfair and violates Jackson's due process and equal protection rights under the United States and Pennsylvania Constitutions.

The Board argues that Jackson was convicted of a summary offense in the Allegheny County Common Pleas Court, which is a court of record, and that the Board's finding that he was a CPV is supported by substantial evidence. It contends that a common pleas court judge has power to render a decision in a summary criminal proceeding; that Judge Manning was not required to sit as a magistrate to decide the summary charges against Jackson; that no court has ever held that the common pleas court is not a court of record when a judge of that court sits as a magistrate; and that under Jackson's position a defendant would have a right to appeal a decision of the common pleas court judge sitting as a magistrate to the same court, which would not serve the purpose of expediting the business of the court. Relying on the fact that the minute clerk and the court reporter attested to the docket sheet, the Board asserts that "the court at that time must have looked like a court of record and proceeded as a court of record." Board's Brief, p. 10. The Board disputes Judge Manning's statement that he was sitting as a magisterial district

---

**2.** The Court's review of the Board's order is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed or whether the parolee's constitutional rights were violated. *Willis v. Pennsylvania*

*Board of Probation and Parole,* 842 A.2d 490 (Pa.Cmwlth.2004).

**3.** Black's Law Dictionary 380 (8th ed.2004) defines "court of record" as "[a] court that is required to keep a record of its proceedings."

judge as having no legal effect because only the president judge has power to assign a judge to sit as a magisterial district judge and there is no indication that Judge Manning was assigned to sit in that capacity.

Section 321 of the Judicial Code, 42 Pa. C.S. § 321, states in part that "[e]xcept as otherwise provided in this subpart every court of this Commonwealth shall be a court of record with all the qualities and incidents of a court of record at common law." The Pennsylvania Rules of Criminal Procedure define a court as a court of record and distinguish it from an issuing authority by defining the latter as "any public official having the power and authority of a magistrate ... or a magisterial district judge." Pa. R.Crim. P. 103. The Rules govern criminal proceedings in all courts including courts not of record. Pa. R.Crim. P. 100.

Nothing in the Rules of Criminal Procedure governing summary cases raises procedure on a citation by an issuing authority to the level of a *"court case."* *Commonwealth v. Buechele,* 298 Pa.Super. 418, 444 A.2d 1246, 1249 (1982) (emphasis in original). From the preceding definitions it is clear that magistrates and magisterial district judges do not fall within the definition of a court of record. Moreover, Section 1515(a)(1) of the Judicial Code, *as amended,* 42 Pa.C.S. § 1515(a)(1), grants magisterial district judges jurisdiction over summary offenses. Further, a common pleas court judge may sit as a committing magistrate. *Commonwealth v. Ritter,* 268 Pa.Super. 563, 408 A.2d 1146 (1979). *See* Section 912 of the Judicial Code, *as amended,* 42 Pa.C.S. § 912: "Every judge of a court of common pleas shall have all the powers of a judge or magisterial district judge of the minor judiciary."

In his March 1, 2007 letter admitted into evidence, Judge Manning confirmed that he acted as a magisterial district judge at the time of Jackson's trial and sentencing. Therefore, Jackson was not convicted of the summary offense in a court of record. As the Court held in *Harper v. Pennsylvania Board of Probation and Parole,* 103 Pa.Cmwlth. 251, 258 n7, 520 A.2d 518, 522 n7 (Pa.Cmwlth.1987), "[c]onvictions of summary criminal offenses before a District Justice do not constitute convictions in a court of record within the meaning of Section 21.1(a) of the [Parole] Act." Thus the Board is not authorized to recommit a parolee as a convicted parole violator for summary convictions.

Without disputing that a common pleas court judge may sit as a magisterial district judge, the Board argues instead that there is no evidence that Judge Manning was assigned by the president judge to sit in such capacity. The president judge of a court has the power to "make all judicial assignments...." Section 325(e)(1) of the Judicial Code, 42 Pa.C.S. § 325(e)(1). Rule 702.2 of the Pennsylvania Rules of Judicial Administration, Pa. R.J.A. No. 702.2, provides that "[t]he president judge of a court of common pleas ... may make temporary assignments of judges from one division to another division of the court when required in order to expedite the business of the court." Also, the president judge may assign any judge from any division of the common pleas court to any other division to sit as a committing magistrate. *Commonwealth ex rel. Riggins v. Superintendent of Philadelphia Prisons,* 438 Pa. 160, 263 A.2d 754 (1970).

Based on its review, the Court perceives no logical basis for accepting the Board's assertion that Judge Manning declared himself to sit as a magisterial district judge without proper assignment from the president judge. Judge Manning's March 1, 2007 letter, admitted into evidence with-

out any objection, constitutes sufficient and competent evidence to support the conclusion that he was empowered to sit as a magisterial district judge in the summary proceeding against Jackson.[4] The Board insinuated in its brief that Judge Manning sat as a magistrate "for no other purpose but to circumvent and flout a duly enacted law of this Commonwealth." Board's Brief, p. 8. The Board offered no support for its brazen and totally inappropriate representation to the Court, which expressly notes that the Board has no authority to decide for Judge Manning, or for the Court, the capacity in which Judge Manning sat when he adjudicated the summary charges.

The Board failed to meet its burden to establish that Jackson was convicted of the summary offense of public drunkenness in a court of record. As a consequence, the Board lacked the authority to recommit Jackson as a CPV under Section 21.1(a) of the Parole Act. *See also Harper.* Because the Board's order is reversed on this ground, the Court need not address any constitutional arguments that Jackson raised.

### *ORDER*

AND NOW, this 18th day of June, 2008, the Court denies the application for summary relief filed by the Pennsylvania Board of Probation and Parole and reverses the order of the Board.

4. On May 2, 2008, the Board filed an application for summary relief and attached a nine-page transcript of the November 8, 2006 proceeding before Judge Manning, which is not a part of the certified record, in an effort to show that Judge Manning did not sit as a magistrate during the proceeding. Jackson filed an answer and new matter, averring that the Board intentionally delayed its submission of the transcript "to impugn the integrity of a Judge ... whose letter was introduced into the record without objection...." New Matter ¶ 1. Because the record certified to the Court establishes that Judge Manning was sitting as a magisterial district judge, the Court has no hesitation in denying the Board's application for summary relief.